UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEUROSURGICAL ASSOCIATES OF NJ, P.C.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**AETNA INSURANCE COMPANY,**<br><br>**Defendant.** | Civil Action No. 14-3882 (BRM)<br><br>**MEMORANDUM OPINION** |

**BONGIOVANNI, Magistrate Judge**

This matter has been opened to the Court upon motion by Plaintiff Neurosurgical Associates of NJ, P.C. ("NANJ") seeking an Order compelling discovery from Defendant Aetna Insurance Company ("Aetna"). [Docket Entry No. 39]. Aetna opposes NANJ's motion to compel. The Court has fully reviewed all arguments raised in support of and in opposition to NANJ's motion and considers same without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons that follow, NANJ's' motion to compel is GRANTED in part.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On June 17, 2014, NANJ filed this case asserting a claim for benefits under a plan governed by ERISA, 29 U.S.C. § 1132(a)(1)(B), and that Aetna failed to provide it with a full and fair review under ERISA, 29 U.S.C. § 1132(a)(3) and 1133. NANJ's claims arise from services provided by Dr. Jonathan Lustgarten, M.D.F.A.C.S. and Dr. Ty J. Olson, M.D.F.A.C.S., both of whom were employed by NANJ, to M.M. on February 21, 2012 at Monmouth Medical Center. Specifically, Dr. Lustgarten, who was assisted by Dr. Olson, performed a craniectomy

1

on M.M. Based on the neurological services rendered to M.M., on May 3, 2012, NANJ filed a claim with Aetna seeking payment totaling $122,714.00 (the "M.M. claim"). (*See* NANJ Br. at 3 (citing Amended Complaint ¶ 26); Docket Entry No. 39-1).

NANJ's physicians are "non-participating" / "out-of-network" providers of service under the terms of the health insurance policies issued and maintained by Aetna. Therefore, they are not "obligated to accept a pre-determined contract rate from Aetna" (*Id*. (citing Amended Complaint ¶ 2)), but "can charge any amount for their services." (Aetna Opp. Br. at 4 (citing Baker Cert., Ex. A at AETNA0052); Docket Entry No. 40). According to M.M.'s 2011 "Benefits Summary," out-of-network providers, such as NANJ, will be paid for services "less than or equal to the Aetna recognized charge[,]" which is the lower of either the out-of-network's normal charge or the charge Aetna "determines to be appropriate based on factors such as the cost of providing the same or similar service or supply and the manner in which charges for the service or supply are made, billed or coded." (*Id*.) For outpatient surgical services, M.M.'s plan with Aetna provided for 50% coinsurance. (*Id*. at AETNA0063).

On June 6, 2012, Aetna sent an "Explanation of Benefits" ("EOB") to NANJ regarding the M.M. claim. (*See* NANJ Br. at 3 (citing Amended Complaint ¶ 29)). As detailed in the EOB, Aetna paid $692.69 in connection with the services provided by Dr. Lustgarten to M.M. and $180.36 in connection with Dr. Olson's services. (*Id*. (citing Amended Complaint ¶¶ 30-31)). The EOBs indicated that with respect to the services rendered by Dr. Lustgarten, AETNA paid "50% of the reasonable and customary rate due to multiple procedures performed on the same date of service" and that certain charges for the services provided exceeded the "recognized charges . . . for the same service." (*Id*. at 4 (citing Amended Complaint ¶¶ 32-33)). Further,

with respect to the services provided by Dr. Olson, the EOBs indicated that "the charge for the assistant surgeon, co-surgeon, or surgical team is not covered under the member's plan" and that "[t]he covered medical expense is based on . . . recognized charge . . . as well as an adjustment of procedure codes or application of multiple procedure percentage allowances." (*Id*. (citing Amended Complaint ¶¶ 34-35)).

After receiving the EOBs, NANJ states that it contacted Aetna via telephone on June 18, 2012 to file an initial administrative appeal and was informed on July 9, 2012 that this initial administrative appeal was denied. (*Id*. at 5 (citing Amended Complaint ¶¶ 36-37)). NANJ maintains that it wrote Aetna on August 30, 2012 to inform Aetna that its initial denial was made without a formal letter and to request that Aetna provide certain information in support of its denial of NANJ's initial appeal. (*Id*. citing (Amended Complaint ¶ 38)). Specifically, NANJ maintains that in the August 30, 2012 letter, it informed Aetna that it had had a previous verbal communication with Aetna's Medical Director in which NANJ confirmed that its claims regarding the services provided to M.M. "had been denied due to Aetna's determination that the services rendered by Drs. Lustgarten and Olson were not incurred due to a 'medical necessity.'" (*Id*. (citing Amended Complaint ¶ 39)). NANJ says that in the August 30, 2012 letter, it also disputed Aetna's claim that the services provided to M.M. were medically necessary, noting that if that were true Aetna would not have made any payment regarding its claim. (*Id*. citing Amended Complaint ¶ 40)). NANJ also advised Aetna of certain mistakes Aetna made when processing the claims made with regard to Dr. Lustgarten, informed Aetna that it failed to consider all information provided by NANJ and asked that its claim for services provided to M.M. be set for a secondary appeal. (*Id*. (citing Amended Complaint ¶¶ 41-42)).

3

In correspondence dated September 27, 2012, Aetna denied NANJ's initial appeal, asserting that "allowances are based on the Aetna Market Fee Schedule (AMFS)." (*Id*. at 5-6 (citing Amended Complaint ¶ 43)). Further, in a letter dated October 2, 2012, Aetna notified NANJ that it was in the process of completing its secondary appeal, and that the payments for the M.M. claim "were based on Reasonable and Customary (R&C)." (*Id.* at 6 (citing Amended Complaint ¶ 45)). NANJ, however, maintains that, contrary to what was represented in the October 2, 2012 letter, during a telephone call on October 16, 2012, Aetna advised NANJ that "the M.M. Claim was paid at the 'correct Aetna market fee[.]'" (*Id*. (citing Amended Complaint ¶ 45)).

On November 8, 2012, Aetna reaffirmed the denial of NANJ's claims submitted in connection with the craniectomy performed on M.M., denying NANJ's secondary appeal. (*Id*. (citing Amended Complaint ¶ 46)). In the November 8, 2012 letter, Aetna informed NANJ:

> We have performed a full <u>and final</u> investigation of the above listed claim(s) . . . Based on our review of all available information, including our policy concerning payment to nonparticipating providers, your written request and claim form, and any additional information you have submitted, we are not modifying our prior determination.
>
> To determine the payment amount when a provider does not participate with Aetna and the plan does not define the applicable allowed amount, our responsibility is to pay a fair amount for your services.
>
> Our nonparticipating fee schedule was developed using the industry standard of the Centers for Medicare and Medicaid Services (CMS) Resources Based Relative Value Scale (RBRVS) (the "Medicare allowable amount"), plus a premium, to provide a fair level of reimbursement for nonparticipating providers and still protect our members and plan sponsors from incurring unpredictable medical expenses. We chose a RBRVS payment methodology because it is based on the resource costs (physician

> work, practice expense and professional liability insurance) required to perform each service.

(Amended Complaint, Ex. G at 1-2).

On November 16, 2012, NANJ responded to Aetna's November 8, 2012 correspondence, challenging Aetna's determinations with respect to the M.M. claim. In same, NANJ noted that Aetna's November 8, 2012 letter, which indicated that the M.M. claim was processed using the CMS RBRVS contradicted Aetna's October 2, 2012 correspondence, which indicated that payment was based on Reasonable and Customary R&C. (NANJ Br. at 7 (citing Amended Complaint ¶ 48)).

Given the outcome of its secondary appeal and the reasoning behind it, NANJ requested an external review regarding claims associated with Dr. Olson's provision of services to M.M. (*Id*. (citing Amended Complaint ¶ 49). MCMC conducted same. "On June 27, 2013, MCMC issued a *Decision Notification* with regard to the external review of Dr. Olson's claim" in which "Aetna's denial of claims for services rendered by Dr. Olson on behalf of M.M." was upheld. (*Id*. (citing Amended Complaint ¶ 50)).

In light of the "seemingly contradictory explanations" Aetna has provided with respect to the denial of NANJ's claims for the services provided to M.M., NANJ filed the instant motion to compel, seeking discovery outside of the administrative record. (*Id*. at 7). NANJ contends that additional discovery is warranted "based upon Aetna's arbitrary and inconsistent denial of the subject claim." (*Id*. at 8).

## II. THE PARTIES' ARGUMENTS

### A. NANJ'S ARGUMENTS

While NANJ recognizes that in cases such as this, which are governed by ERISA,

discovery is generally limited to the administrative record, it notes that discovery will nevertheless be expanded beyond the administrative record where there is evidence of procedural irregularities, "a conflict of interest, bias, or inconsistent decision making[.]" (*Id*. at 8 (quoting *Delso v. Trustees of Ret. Plan for Hourly Employees of Merck & Co.*, No. CIV. 04-3009 (AET), 2006 WL 3000199, at *2 (D.N.J. Oct. 20, 2006) (internal quotation marks omitted))). NANJ argues that "[s]uch circumstances exist in the present case[.]" (*Id*. at 9).

In this regard, NANJ notes that according to the EOBs dated June 6, 2012, Aetna paid $692.69 on Dr. Lustgarten's claim for $60,664.31 and $180.36 on Dr. Olson's claim for $61,176.64 because (1) certain procedures were paid at 50% of the reasonable and customary rate due to multiple procedures being performed on the same date of service; (2) the service charge for certain procedures exceeded the member's plan; (3) the elective services of a surgeon or nurse assisting the operating surgeon is not covered under the member's plan; and (4) other procedures were based on Aetna's determination of the recognized / negotiated rate for in the network for services performed. NANJ argues that almost immediately Aetna began changing its reasoning for its claims decision. For example, NANJ points out that in response to its initial telephonic appeal of Aetna's decision, Aetna's Medical Director indicated that NANJ's claim for payment had been denied because the services provided by Drs. Lustgarten and Olson were not a "medical necessity." Yet on September 27, 2012, Aetna sent NANJ correspondence upholding its original decision denying NANJ's claim for payment, explaining that "allowances are based on the Aetna Market Fee Schedule (AMFS)." (*Id*. at 11 (quoting Second Amended Complaint ¶ 43 (internal quotation marks omitted))). NANJ then notes that on October 2, 2012, Aetna sent further correspondence, again changing the reasoning for its denial of payment, stating that the

6

payments made on NANJ's claim "were based on Reasonable and Customary ("R&C")." (*Id.* (quoting Second Amended complaint ¶ 45 (internal quotation marks omitted))). As if those inconsistencies were not sufficient, NANJ contends that Aetna provided yet a different explanation for its denial of payment on October 16, 2012, when a representative advised that NANJ's claim was paid at the "correct Aetna market fee." (*Id.* (quoting Second Amended Complaint ¶ 45 (internal quotation marks omitted))).

If these multiple differing explanations, three of which were given in less than three weeks, were not sufficient to warrant discovery, NANJ points out that Aetna continued to provide it with varying explanations for its denial of payment. For example, in correspondence dated November 8, 2012, Aetna advised NANJ that its secondary appeal was denied, determining that the M.M. claim was processed at the Medicare and Medicaid CMS RVU fee schedule. NANJ, however, argues that the claim should never have been processed under said fee schedule, but according to the plan, "reasonable and customary" should have been used. NANJ maintains that a representative of Aetna confirmed as much on November 16, 2012.

Given the ever-changing, arbitrary and inconsistent reasons for Aetna's denial of the M.M. claim, NANJ argues that discovery beyond the administrative record is warranted. Indeed, NANJ claims that "[t]he procedural irregularity and unfairness in Aetna's 'reasoning' is readily apparent." (*Id.* at 12). In light of the foregoing, NANJ asks that the Court compel Aetna to respond to the following discovery demands:

1. All documents relied upon in making the benefit determination.

2. All documents submitted, considered, or generated in the course of making the benefit determination.

7

3. All documents that Aetna contends demonstrate compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of 29 C.F.R. §2560.503 in making the benefit determination.

4. All documents that evidence, refer, or relate to any requests for pre-authorization of the services that are the subject of this lawsuit.

5. All documents that evidence, refer, or relate to written communications or oral communications between NANJ and Aetna with regard to this claim.

6. All documents that evidence, refer, or relate to written communications or oral communications between or among Aetna's employees, agents or representatives with regard to the determination of the claim (other than attorney-client communications).

7. For each service code that was part of the claim that is the subject of this lawsuit, all documents that evidence, refer, or relate to:

   A. Aetna's determination whether the charges were reasonable and appropriate;

   B. Aetna's determination of the reasonable and customary rate;

   C. Aetna's determination of recognized charges for the same service;

   D. Aetna's determination, if any, that a charge for an assistant surgeon, co-surgeon, or surgical team is not covered under the plan;

   E. Aetna's determination of the recognized charge or negotiated rate in the network for the services performed and any adjustment of procedure codes or application of multiple procedure percentages allowances;

   F. Aetna's statement that allowances are based on the Aetna Market Fee Schedule (AMFS) and how the amount of any such allowance was determined;

   G. Aetna's statement that the claim payment was based on Reasonable and Customary (R&C) and how the amount of any such payment was determined;

   H. Aetna's statement that its responsibility is to pay a fair amount for services and how the amount of any such payment was determined;

I. Aetna's statement that its nonparticipating fee schedule was developed using the industry standard of the Centers for Medicare and Medicaid Services (CMS) Resources Based Relative Value Scale (RBRVS) (the Medicare allowable amount") and how the amount of any such payment was determined thereunder was determined;

J. Aetna's statement that benefits were to be processed at 60% of the usual and customary and how the amount of any such payment was determined.

8. Whether the Aetna Market Fee Schedule (AMFS), Reasonable and Customary (R&C), a fair amount for the services rendered, and/or the Centers for Medicare and Medicaid Services (CMS) Resources Based Relative Value Scale (RBRVS), are the same according to Aetna or an explanation as to how they differ.

9. For each service code that is the subject of this lawsuit, a final and definitive statement from Aetna setting forth the basis for Aetna's calculation of the amount payable.

10. The following documents with respect to any claims paid by Aetna to NANJ for the same service codes at issue in this case but for services rendered to any other patient during the eighteen (18) month periods preceding and following February 21, 2012:

    A. Health insurance claims forms/HCFs submitted by NANJ to Aetna;

    B. Explanations of Benefits/EOBs issued to NANJ;

    C. All documents that evidence, refer, or relate to written communications or oral communications between NANJ and Aetna with regard to the claim;

    D. All documents submitted by Aetna in connection with any appeal of the benefit determination; and

    E. All documents issued by Aetna to NANJ in response to any appeal of the benefit determination;

11. The following documents with respect to any claims paid by Aetna to any provider in New Jersey or within 25 miles of New York City other than NANJ for the same service codes at issue in this case during the eighteen (18) month periods preceding and following February 21, 2012:

    A. Health insurance claim form/HCFs submitted by the provider to Aetna;

B. Explanations of Benefits/EOBs issued by the provider to NANJ;

   C. All documents that evidence, refer, or relate to written communications or oral communications between the provider and Aetna with regard to the claim;

   D. All documents submitted by Aetna in connection with any appeal of the benefit determination; and

   E. All documents issued by Aetna to the provider in response to any appeal of the benefit determination.

(Decl. of Andrew Linden, Esq. ¶ 4; Docket Entry No. 39-2).

### B. AETNA'S ARGUMENTS

Aetna, in contrast, maintains that no additional discovery is warranted. In this regard, Aetna argues that in cases such as this, the evidence for determining whether an ERISA benefits denial was arbitrary and capricious is limited to the administrative record, which generally cannot be supplemented with additional discovery during litigation. Aetna claims that only where a plaintiff identifies "a reasonable suspicion of misconduct" is "expanded discovery" permitted. (Aetna Opp. Br. at 8 (citing *Irgon v. Lincoln Nat'l Life Ins. Co.*, 2013 U.S. Dist. LEXIS 162703, at *3 (D.N.J. Nov. 13, 2013))). Because NANJ has not identified a reasonable suspicion of misconduct, Aetna claims NANJ's motion to compel must be denied.

Aetna argues that here, NANJ relies on the allegedly conflicting information Aetna gave regarding the payment made on the M.M. claim to establish a reasonable suspicion of misconduct. Aetna, however, contends that NANJ's position "is belied by the actual documents relied upon by Plaintiff which show that Aetna was consistent in describing that the claims at issue were reimbursed pursuant to the Plan's out-of-network benefit level, which is a fee scheduled[] developed by Aetna relying in part on Medicare allowable amounts." (*Id*. at 10).

As a result, Aetna claims that NANJ's arguments regarding Aetna's "inconsistent" reasoning are "wholly without merit" and NANJ's request for discovery outside the administrative record should be denied. (*Id*.) Indeed, Aetna argues that NANJ is "dissatisfied with the amount they were reimbursed pursuant to the Plan for the claims at issue[,]" but that that is not enough to trigger expanded discovery. (*Id*. at 11).

Further, Aetna takes issue with the fact that NANJ's proposed discovery requests do not seek information on Aetna's alleged bias or irregularity, but instead focus on the merits of NANJ's claims. Aetna claims that this is improper as even when expanded discovery is allowed, the discovery must relate to the alleged procedural irregularities. (*See Id*. at 12). In this regard, Aetta argues that NANJ's first six requests "all seek documents related to the actual making of the benefit determination, which clearly involve[s] the merits of the decision"; NANJ's seventh request, which consists of ten subparts, "seeks information related to how Aetna calculated the allowed amount for the claims at issue[;]" NANJ's eighth and ninth requests "seek information related to the calculation of benefits, which evidences that Plaintiff's entire purpose for seeking discovery is a dispute with the merits of the decision"; and NANJ's tenth and eleventh requests, which broadly seek information "related to any payments made by Aetna to both Plaintiff, and any provider in the state of New Jersey or within twenty-five (25) miles of New York, for a thirty-six (36) month period surrounding the date for the benefit determination in this matter for the CPT codes at issue in this litigation[,]" and have no relation to Aetna's benefit determination regarding the M.M. claim, are the best examples of NANJ's improper true motivation. (*Id*. at 12-13).

Lastly, Aetna argues that in its motion to compel, NANJ has relied upon documents

outside of the administrative record in seeking expanded discovery. Specifically, Aetna contends that certain correspondence, namely that "with Aetna's Provider Resolution Team[,]" "was not filed on behalf of or as a representative of the member M.M." and is not part of the administrative record produced by Aetna. (*Id*. at 15). Aetna argues that Plaintiff never objected to or sought to supplement the administrative record with said correspondence. As such, Aetna claims that NANJ "cannot now use the documentation . . . to obtain the broad" expanded discovery it now seeks. (*Id*.)

## III. ANALYSIS

In ERISA governed cases such as this, where the Plan at issue grants the claims administrator, here Aetna, "the full power and authority in its absolute discretion to determine whether a claim is payable under the Plan and to interpret and construe the terms of the Plan and make factual determination [sic] with respect to claims and appeals for benefits and is a named fiduciary for such purposes" (*Id*. at 4 (quoting Baker cert., Exhibit "A" at AETNA0339))), a claim for benefits is reviewed under the arbitrary and capricious standard. *Estate of Kevin Schwing v. Lilly Health* Plan, 562 F.3d 522, 525 (3d Cir. 2009). Further, where a claim for benefits is reviewed under the arbitrary and capricious standard, the record on review is generally "limited to that evidence that was before the administrator when it made the decision being reviewed[,]" *i.e.*, the administrative record. *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997); *Kosiba v. Merck & Co.*, 384 F.3d 58 69 (3d Cir. 2004). This helps further "ERISA's goal of providing plan participants and beneficiaries an expeditious and inexpensive method of resolving their disputes" and "encourage[s] the parties to resolve their

dispute at the administrative level." *O'Sullivan v. Metro. Life. Ins. Co.*, 114 F.Supp. 2d 303, 309 (D.N.J. 2000).

There are, however, circumstances under which discovery outside the administrative record is permissible. Namely, a "[p]laintiff's use of evidence beyond the administrative record is appropriate to prove a 'conflict of interest, bias, or a pattern of inconsistent benefit decisions.'" *Delso v. Trustees of the Ret. Plan for the Hourly Employees of Merck & Co., Inc.*, Civil No. 04-3009 (AET), 2006 WL 3000199, at *2 (D.N.J. Oct. 20, 2006) (quoting *Otto v. W. Pa. Teamsters and Employers Pension Fund*, 127 Fed. App'x 17, 21 n.7 (3d Cir. 2005)). Thus, "[i]f a plaintiff establishes a reasonable suspicion of misconduct, then courts should allow discovery requests reasonably likely to either confirm or disconfirm the presence of bias[,]" conflicts of interest and/or a pattern of inconsistent benefit decisions. *Id*. at 3-4 (citing *Kosiba*, 384 F.3d at 67 n. 5; *Otto*, 127 Fed. App'x at 21 n. 7); *Dandridge v. Raytheon Co.*, Civil No. 08-4793 (WJM), 2010 U.S. Dist. LEXIS 5854, at *15-16 (D.N.J. Jan. 26, 2010) (holding "that some discovery into alleged procedural irregularities is permitted in ERISA cases, but only when the party seeking discovery has made at least some minimal showing of bias or irregularity that could have impacted the administration of the claim.") Importantly, when discovery is permitted, it must focus on "the presence of a conflict of interest, bias, or inconsistent decision making[.]" *Delso*, 2006 WL 3000199, at *2. "[D]iscovery into the *merits* of the Defendants' claim determination . . . is . . . prohibited." *Dandridge*, 2010 U.S. Dist. LEXIS 5854, at *8.

Here, NANJ relies on the inconsistent explanations Aetna provided regarding its determination of the M.M. claim as evidence of procedural irregularities in Aetna's administration of the claim. NANJ maintains that the numerous inconsistent rationales Aetna

13

provided for its denial of the M.M. claim establishes the reasonable suspicion of misconduct needed to permit discovery outside of the administrative record. The Court agrees. While Aetna takes issue with NANJ's reliance on information outside of the administrative record as evidence of inconsistent decision making, the Court does not find this use to be inappropriate in this context. *See Otto*, 127 Fed. App'x at 21 n.7 (stating that "[e]vidence beyond the administrative record may in certain circumstances be relevant and admissible as to issues . . . such as trustee conflict of interest, bias, or a pattern of inconsistent benefit decision[.]") Further, while Aetna argues that the evidence shows it remained consistent in its reasoning for denying the M.M. claim, the Court finds that information proffered by NANJ is sufficient to establish "a reasonable suspicion of misconduct[.]" *Delso*, 2006 WL 300199, at *3. As a result, the Court finds that some discovery regarding the alleged inconsistent explanations provided by Aetna regarding its denial of the M.M. claim is warranted.

Nevertheless, the Court finds that the extensive discovery requested by NANJ is far too broad. Indeed, much of the information requested by NANJ focuses on the merits of Aetna's determination of the M.M. claim. As noted above, this is inappropriate. Instead, the discovery must focus on the alleged procedural irregularity: here, the alleged inconsistent explanations Aetna gave regarding its denial of the M.M. claim. As a result, the Court shall only compel Aetna to respond to the following discovery demands, which should be sufficient to elucidate Aetna's reasons for denying the M.M. claim and confirm whether there was any misconduct on Aetna's part: Requests Nos. 5, 6, 7A-7J, and 8. Aetna is directed to respond to these requests by **August 25, 2017**.

## III. Conclusion

For the reasons set forth above, Plaintiffs' Motion to Compel is GRANTED in part. An appropriate Order follows.

Dated: August 1, 2017

s/Tonianne J. Bongiovanni  
**HONORABLE TONIANNE J. BONGIOVANNI**  
**UNITED STATES MAGISTRATE JUDGE**